891 So.2d 57 (2004)
Julie MORRIS
v.
The ADMINISTRATORS OF The TULANE EDUCATIONAL FUND.
No. 2004-CA-0738.
Court of Appeal of Louisiana, Fourth Circuit.
December 8, 2004.
Todd R. Slack, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, for Plaintiff/Appellant.
*58 Stewart E. Niles, Jr., Daniel E. Buras, Jr., Niles, Salas, Bourque & Fontana, L.C., New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
Julie Morris, the plaintiff/appellant, appeals from a judgment granting the dilatory exception of prematurity filed by the defendant/appellee, The Administrators of the Tulane Educational Fund (hereinafter "Tulane")[1], that dismissed the plaintiff's petition without prejudice. After reviewing the record and applicable law, we reverse the judgment and remand the case to the trial court for further proceedings.
The record reveals that Ms. Morris was a student at Tulane University and a nationally ranked tennis player who intended a professional career in tennis following her graduation. In the first week of September 2002, Ms. Morris injured her left foot[2] and presented herself to one of the athletic trainers[3] employed by Tulane in the Tulane Training Room. The unnamed trainer, believing that Ms. Morris had sustained a muscle strain, recommended heat, ice, exercise bands, and an air boot.
On 10 September 2002, Ms. Morris saw Gregory Stewart, M.D., with regard to the same injury, who diagnosed her with a mid-foot strain, ordered her out of practice, gave her a prescription for Celebrex, and told her to continue treatment in the training room. He told her to return in one to two weeks if she continued to have problems.
In early October 2002, an athletic trainer[4] cleared Ms. Morris to return to tennis despite her complaints of continued foot pain. On 18 October 2002, the head trainer[5] cleared Ms. Morris to play in a tennis tournament.
Ms. Morris returned to Dr. Stewart on 25 October 2002, at which time he diagnosed a possible stress fracture and ordered an MRI. Dr. Stewart charted that he would "allow [Ms. Morris] to practice and play to her tolerance." The MRI was obtained on 5 November 2002, and after reviewing the test, Dr. Stewart diagnosed a stress fracture. Ms. Morris has undergone several surgeries; however, her foot is permanently damaged and her tennis career has ended.
On 17 July 2003, Ms. Morris filed a petition for damages against Tulane, alleging that, as a result of the delay in obtaining medical attention,[6] she was forced to *59 undergo several surgeries and that her foot is permanently damaged, ending her tennis career. Ms. Morris alleged that the trainers had "diagnosed" a sprain of her foot and that Tulane is vicariously liable for the negligent actions of its trainer employees. The trainer(s) were not named in the petition.
Tulane responded to the petition with a dilatory exception of prematurity, arguing that Ms. Morris' allegations fell within the coverage of the Louisiana Medical Malpractice Act ("MMA"). On 29 October 2003, the trial court admitted a copy of a certificate of enrollment demonstrating that Tulane University School of Medicine was a qualified health care provider.[7] On 7 November 2003, following a hearing on the dilatory exception, the trial court granted the exception and dismissed the case without prejudice. No written reasons for judgment were given; however, at the hearing the trial court agreed with Tulane's argument that an athletic trainer is a qualified health care provider for purposes of the MMA.
Ms. Morris presents two assignments of error for consideration. First, she contends that athletic trainers are not afforded the protection of the MMA because they are not defined as a "health care provider" in La. R.S. 40:1299.41(A)(1). Second, she argues that, under the facts of this case, it is unknown if the athletic trainer could be considered a health care provider because the trial court did not allow discovery. Therefore, Ms. Morris seeks reversal of the exception and remand so that discovery can be conducted.
La. R.S. 40:1299.41 sets forth those professions that are entitled to the protection of the MMA. The statute provides in pertinent part:
"Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, registered or licensed practical nurse or certified nurse assistant, offshore health service provider, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, licensed perfusionist, ... or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting *60 in the course and scope of his employment. [Emphasis supplied.]
La. R.S. 40:1299.41(A)(1).
The parties agree that an "athletic trainer" is not one of the specified specialties enumerated in the statute and that the statute is exclusive, not illustrative. Ms. Morris thus contends that if a profession is not listed, as a matter of law, it cannot be a health care provider. Conversely, Tulane argues that athletic trainers are covered by the act because they provide professional health care services to athletes on behalf of Tulane whose business is conducted principally[8] by health care providers. Tulane also contends that "athletic trainers" in Louisiana are licensed and regulated by the Louisiana State Board of Medical Examiners. Finally, Tulane maintains that to be an athletic trainer, the person can hold a degree in physical therapy and that a "physical therapist" is specifically included in La. R.S. 40:1299.41(A)(1).
Ms. Morris responds that Tulane has not demonstrated that it is a "corporation whose business is conducted principally by health care providers," as required by La. R.S. 40:1299.41(A)(1), so that its athletic trainers might qualify for protection under the MMA. However, Ms. Morris concedes that should Tulane provide evidence that the Tulane athletic trainers are physical therapists, she will not contest the necessity of a medical review panel.
In 1985, the state enacted the "Louisiana Athletic Trainers Law," La. R.S. 37:3301, et seq., which profession is regulated by the Louisiana State Board of Medical Examiners ("the Board"). An athletic trainer is defined as:
"Athletic trainer" means a person with the specific qualifications set forth in R.S. 37:3306 who, under the direction and supervision of a medical physician carries out the practice of prevention, emergency management, and physical rehabilitation of injuries incurred by athletes at an educational institution, professional athletic organization, and any athletes participating in athletic competition or events sponsored by these organizations or other board sanctioned organization. In carrying out these functions, the athletic trainer shall use whatever physical modalities are prescribed by a team physician or consulting physician, or both.
La. R.S. 37:3302(1). La. R.S. 37:3306 delineates the necessary qualifications to become a Board certified athletic trainer:
A. A person who applies for an athletic trainer certificate must possess at least one of the following qualifications:
(1) The applicant shall have met the athletic training curriculum requirements of a college or university approved by the board and provide proof of graduation.
(2) The applicant shall hold a degree in physical therapy from a school approved by the board and shall have completed a basic athletic training course, a first aid course as approved by the American Red Cross, a cardiopulmonary resuscitation course as approved by the American Heart Association or American Red Cross, and a nutrition course, and the applicant shall have spent two years in association with an athletic team, show proficiency in acute athletic care, and have *61 letters of recommendation from a physician and a licensed athletic trainer.
(3) The applicant shall have completed, beyond the secondary school level, either as an undergraduate or graduate student, at least four years as an apprentice athletic trainer at a college or university under the direct supervision of an athletic trainer approved by the board. Three of the four years shall be consecutive years under such supervision, military duty excepted. An applicant for certification under this provision shall provide proof of graduation from an accredited college or university and of successful completion of courses in athletic training, first aid, cardiopulmonary resuscitation, and nutrition. [Emphasis supplied.]
Clearly, the statute does not mandate that an athletic trainer be a physical therapist. Therefore, because an "athletic trainer" is not included in the definition of "health care provider" found in La. R.S. 40:1299.41(A)(1), we find, as a matter of law, that an athletic trainer is not automatically afforded the protections of the MMA. Therefore, the trial court erred in granting the dilatory exception of prematurity.
While this does not mean that the trainers at issue that Ms. Morris saw cannot be considered "qualified health care providers" under the facts presented, the record is devoid of sufficient evidence to make such a determination. First, we do not know whether the trainers have in fact been certified under the Louisiana Athletic Trainers Law. If they are, we do not know what qualifications, if any, they possess in order to obtain their certificates. As recognized by Ms. Morris, if they are physical therapists, they would be covered by the MMA.
Further, we do not know if the trainers qualify as employees of a qualified health care provider, as set forth in La. R.S. 40:1299.41. The enrollment certificate is issued to "Tulane University School of Medicine, Admin. of Tulane Ed. Fund and Faculty Practice Plan," with the address of 1430 Tulane Avenue in New Orleans. The specialty identified is "Clinic." The court assumes this covers Dr. Stewart, but it cannot make the same assumption for the athletic program of Tulane University. No assertion exists that the trainers work for the Tulane University School of Medicine and the record is devoid of evidence that they do. The certificate does not mention Tulane University itself or its athletics program found at the Tulane University campus where the alleged injury and damages occurred. It mentions the Tulane University School of Medicine located at 1430 Tulane Avenue. Further, no explanation appears in the record on appeal as to what is the "Faculty Practice Plan."
Finally, the court cannot determine from the appellate record if Tulane, the named defendant, is a "corporation whose business is conducted principally by health care providers." See La. R.S. 40:1299.41(A)(1). Tulane argues that all employees of Tulane are automatically health care providers if they provide any service that is medically related in any form. This argument would mean that every employee working at Tulane University could be considered a qualified health care provider, from secretaries, to janitors, to physics professors, to doctors who provide medical services in the university's student health clinic, and they would extend coverage to any employee who does not work at the medical school. The issue is a question of fact decided on a case-by-case basis. Because of the lack of evidence to make any of these determinations, the matter must be remanded to the trial court for further proceedings.
*62 Based on the foregoing, the judgment of the trial court, granting the dilatory exception of prematurity is set aside and the case is remanded to the trial court for further proceedings consistent with this opinion.
JUDGMENT REVERSED; MOTION DENIED; REMANDED.
NOTES
[1] The Board of Administrators of the Tulane Educational Fund operates Tulane University, a private educational institution with various branches and divisions; hereinafter, when we say "Tulane," we mean The Board of Administrators of the Tulane Educational Fund, the "parent" entity only.
[2] A discrepancy exists in the record as to how Ms. Morris injured her foot. Her verified petition states that the injury occurred while playing tennis, while the 10 September 2002 notes of Tulane University Hospital and Clinic physician, Gregory Stewart, states that the injury occurred when Ms. Morris tried to avoid stepping on her dog as she got out of bed one morning. For purposes of this opinion, the cause of the injury is irrelevant.
[3] As will become clear infra, the phrase "athletic trainer" can have different meanings in different contexts.
[4] The record on appeal is silent as to the qualifications and training of this individual.
[5] Id.
[6] Ms. Morris has filed a separate medical malpractice claim against Dr. Stewart with the Louisiana Patients Compensation Fund for damages due to his alleged failure to timely diagnose and treat the fracture.
[7] Before this case was argued in this court, Tulane filed a motion to supplement the record with a certificate of enrollment that Tulane asserted was filed with the trial court on 29 October 2003; Tulane stated that the certificate was not copied into the appellate record. However, a review of the record reveals that a certificate of enrollment was filed and contained in the record on appeal. We note that the exhibit with which Tulane sought to supplement the record on appeal is not the same exhibit filed in the trial court. While this error appears to be de minimus because Ms. Morris does not contest that a certificate of enrollment was issued to Tulane University School of Medicine for the period of 1 July 2002 to 1 July 2003, Tulane should have first reviewed the record to determine if the exhibit was contained therein and if not, supplemented the record with the same exhibit filed in the court below. Because the certificate of enrollment was contained in the appellate record, the motion to supplement is denied. We rely upon the certificate filed in the trial court.
[8] Although we would tend to agree that Tulane University School of Medicine's business is "principally" [as understood in La. R.S. 40:1299.41(A)(1)] conducted by health care providers, the record on appeal is silent as whether Tulane's business is "principally" conducted by health care providers.